Argued 3 March, decided 21 March, 1904.

### COAST LAND CO. *v.* OREGON COLONIZATION CO.

[75 Pac. 884.]

SERVICE OF PROCESS ON CORPORATION—MANAGING AGENT.

1. Under B. & C. Comp. § 55, providing for service of summons on the "president or other head of the corporation, secretary, cashier, or managing agent," a service on the "vice president and managing agent" of a corporation is sufficient, where the person served was in fact the managing agent, although he had ceased to be vice president, the statute being in the alternative.

SUFFICIENCY OF EVIDENCE OF AGENCY.

2. The evidence here is satisfactory that the person on whom service of summons was made was in fact the managing agent in Oregon of the defendant corporation.

MOTION TO SET ASIDE SERVICE OF SUMMONS—LACHES.

3. A person against whom a judgment has been rendered must move with reasonable promptness to set it aside, if he thinks it wrongful, and laches in that respect will be fatal to procuring relief.  For instance, service of summons in a suit against a corporation having been made on a person who was stated in the return to be the managing agent of the defendant (B. & C. Comp. § 55), a motion four months later to set aside the service because the person served was not the managing agent, and without suggesting a meritorious defense, is unreasonably late and should be overruled.

4. Where, with knowledge of the record in a suit against it, a corporation asks and obtains from a judgment creditor a stay of execution and negotiates for a settlement of the matters involved, a motion to set aside the service and final order for a technical insufficiency, comes too late four months after the entry of the decree.

From Benton: JAMES W. HAMILTON, Judge.

Suit by the Coast Land and Livestock Company against the Oregon Pacific Colonization Company and others. From an order overruling a motion to set aside a default decree and to quash the return of summons the corporation appeals. AFFIRMED.

For appellant there was a brief over the name of *Bronaugh & Bronaugh,* with an oral argument by *Mr. Earl C. Bronaugh* and *Mr. George F. Martin.*

For respondent there was a brief over the name of *Weatherford & Wyatt,* with an oral argument by *Mr. Jas. K. Weatherford.*

MR. JUSTICE BEAN delivered the opinion of the court.

This is an appeal from an order overruling a motion to set aside a decree and to quash a return on a summons. The plaintiff is an Oregon corporation, with its principal office at Albany, and the defendant is a Minnesota corporation. On June 11, 1902, S. F. Cook obtained from the plaintiff and the Oregon Agricultural Company an option in the name of F. A. Brown for the purchase of about 55,000 acres of land in Benton, Polk, and Lincoln counties at the rate of $1.75 an acre. By the terms of the agreement Brown was to pay $1,000 cash and $5,000 within 60 days, upon the payment of which the land was to be deeded to him, the grantors taking notes for the deferred payments, secured by a mortgage on the property. On July 3d Brown assigned his option to George H. Selover, of Minneapolis, Minnesota, and on July 28th Selover and S. H. Bates, of Minnesota, and Cook organized the defend-

ant corporation, for the purpose of taking over the Brown option and handling and disposing of the property, it being agreed that Cook should receive one-fourth of the profits of the venture. As appears from the articles of incorporation, the only parties composing the company were Selover, Cook, and Bates, who occupied the offices of president, vice president, and secretary and treasurer, respectively, which offices they were to hold for one year, or until the next annual meeting of the corporation, which was scheduled to be held in Minneapolis in the following January. In August, 1902, the defendant complied with the terms of the option, paid the balance of the first payment therein stipulated, and the plaintiff and its associate company deeded to it the land as agreed upon; the plaintiff taking notes of the defendant and Selover and Cook for the deferred payments secured by a mortgage on the property. Default was made in the payment of these notes when due, and on March 11, 1903, the plaintiff commenced a suit in the circuit court for Benton County to foreclose the mortgage, making service on Cook in that county, who is stated in the return of the sheriff to be the "vice president and managing agent" of the defendant corporation. No appearance was made for the defendant, and on March 23d a judgment and decree was taken against it by default. On July 8, 1903, after execution had been issued and the property advertised for sale, the defendant, without any showing of merits, appeared specially, and moved to set aside the decree and to quash the return on the ground that Cook was not at the time the service was made on him either vice president or managing agent of the defendant. This motion was denied, and defendant appeals.

1. From the minutes of the annual meeting of the defendant corporation and of its board of directors it appears that prior to the commencement of this suit Cook's term

as director and vice president had expired, and his successor had been elected and qualified, so that he was not the vice president at the time the summons was served upon him. This is, however, immaterial, if he was in fact the managing agent of the defendant. The statute provides that summons shall be served upon a private corporation by delivering a copy thereof, together with a copy of the complaint, "to the president or other head of the corporation, secretary, cashier or managing agent": B. & C. Comp. § 55. Under this statute and the proceedings had in this case substantially two questions are presented for decision: (1) Whether Cook was the managing agent of the defendant, within the meaning of the statute, at the time the summons was served upon him; and (2) whether the defendant was guilty of such laches or delay in moving against the service as will bar the relief sought.

2. The contention for the defendant is that Cook was not an officer or agent of the company, and had no connection therewith except as a stockholder, and therefore the service was void. For the plaintiff it is contended that Cook was in fact the managing agent of the defendant in Oregon, but, if he was not, the defendant's conduct and laches has been such as to prevent it from objecting to the service or questioning the validity of the decree based thereon. Numerous *ex parte* affidavits have been filed in support of the contentions of the respective parties. These affidavits are lengthy, in many respects conflicting, and afford unsatisfactory evidence upon which to determine a disputed question of fact. We shall not attempt to note their contents in detail, but shall state generally our conclusions. Some important and material facts in the case, however, are either undisputed or so clearly shown as to be beyond controversy. The defendant was organized for the sole purpose of taking title to and disposing of the land described in the option obtained by Cook from the plaintiff,

and it had no other business. Selover, Bates, and Cook
composed the corporation, the two former residing in Min-
nesota and the latter in Oregon. At the time the company
was organized and the land purchased it was understood
that Cook should act as the defendant's agent in Oregon
for the sale of the land, and from the organization of the
the company up to the time of the service of the summons
he was endeavoring to effect a sale of the property. Bates
and Selover say in their affidavits that it was the under-
standing that Cook was to act as the agent only in case de-
fendant should conclude to open an office in Portland and
sell its land by retail; that in October, 1902, Cook was ad-
vised by them that the company had decided not to sell
its land at retail, and would not open an office at Portland,
and that he was not to have anything further to do with
the company except as its vice president and director. In
this regard, however, they are contradicted by Cook, who
says that, as a part of the consideration for the transfer to
the defendant of the option previously secured by him, it
was agreed that he should have an undivided one-fourth
interest in all the profits arising from the sale of the land,
and should be the general manager of the company's bus-
iness in Oregon ; that immediately thereafter, as such man-
ager, he went into possession of the land purchased from
the plaintiff, and has ever since acted in that capacity;
that he has never been notified of any change in the man-
agement or of his relation to the company.

Mr. Stone, the president of the plaintiff, Mr. Hogan, its
secretary, Mr. Davis, one of its directors, and Mr. Weath-
ford, its attorney, say that Selover, Bates, and Cook were
all present and participated in the negotiations for the sale
of the land by the plaintiff to the defendant; that it was
then stated and represented by them that Cook was to be
the general manager of the defendant in Oregon, and to
have charge of and sell its land. Mr. Stone says that there-

after he (Cook) "seemed to be the general manager in handling the lands and looking after them, and has been continuously up to the present time handling said lands so far as any person has been looking after them." Mr. Weatherford says that "both George H. Selover and Silas H. Bates informed me that Mr. S. F. Cook was to be the active manager in making sales of said lands. This they informed us before they purchased it and after the purchase was made, and the said S. F. Cook was on the ground and went into possession and handling the lands, and continued in said capacity until long after service was made of the summons herein referred to, without any change being made, so far as I could discover; and, as I understand, he is still in possession, and that no notice was ever given of any change in the officers of said company or in the management thereof." Mr. Hogan says that at the time and during the negotiations for the purchase of the land by the defendant, Selover frequently stated that Cook was to be the manager and agent for the defendant in Oregon; "that to my personal knowledge the said S. F. Cook has since that time and at various and divers times been in Benton and Lincoln counties, showing said lands to prospective purchasers; and that on the date of the service of summons in the above-entitled suit the said S. F. Cook was in Corvallis, returning from one of such trips." J. D. Wilcox, the agent of the Oregon Agricultural Company, testifies that he was frequently informed by Selover and Bates that Cook was to be the general manager of the defendant, and that he had never heard of his being removed, or any change made in the management, until the affidavits were filed in support of the motion to set aside the decree. These affidavits are in some respects contradicted by Selover and Bates, but the weight of the testimony is so strongly in favor of the plaintiff that we think it must be taken as a fact in the case that Cook was the

'agent of the defendant in Oregon at the time of the service of the summons, and its general representative here.

This conclusion is supported by the fact that about a month before the commencement of the suit Selover, the president of the company, was advised by Mr. Weatherford that he had been instructed to commence foreclosure proceedings, and would proceed to do so at once, unless the defendant would accept certain propositions for settlement made by the plaintiff, which it refused; that about the time the suit was commenced, Bates, the secretary and treasurer of the defendant, came from Minnesota to Oregon as its representative for the purpose of adjusting its affairs with the plaintiff. He arrived in Albany about the 11th of March—the day on which the suit was commenced and the summons was served—and remained until the last of the month or the first of April. During that time he frequently called upon and had numerous interviews with the attorney and the officers of the plaintiff company, and was informed by them and knew that the suit had been commenced, that service had been made upon Cook as the agent of the defendant, and was advised before he left Albany that a decree of foreclosure had been rendered, based on such service. He never at any time stated or intimated to the officers or agents of plaintiff or its attorney that Cook was not the agent or representative of the defendant. On the contrary, after the rendition of the decree, and after he had knowledge of that fact, he entered into negotiations with the plaintiff for a settlement, and obtained from it an agreement to delay execution on the decree in order to give the defendant time to consider a proposition of settlement made by plaintiff, or to dispose of the land and pay the judgment. Mr. Bates admits that he was in Albany during the dates referred to, and that he had conferences with the officers and attorney of the plaintiff, and he knew that the suit had been commenced; but denies

that he knew that service had been made upon Cook, or that a decree of foreclosure had been entered. He is, however, contradicted by the positive affidavits of five or six reputable citizens, and, if they are to be believed, his memory is at fault.

3. Under these circumstances the motion to set the decree aside and to quash the return was properly denied. No showing of merits is made by the defendant, and no claim that it has any defense to the suit. Its motion is based solely on the ground that Cook was not an officer or agent of the company upon whom valid service could be made. Whether he was technically a managing agent within the meaning of the statute providing for the service of summons on private corporations, he was its agent and representative in Oregon, looking after and attending to its property and business in this State, and, if the service upon him was not valid, it was the defendant's duty to have promptly moved against it, and not have waited until after the decree had been rendered, and the property advertised for sale. It is the duty of a party against whom a judgment has been wrongfully rendered to exercise reasonable diligence, after knowledge thereof, in procuring its vacation, and his inexcusable laches and delay will preclude him from obtaining the relief sought. In such case the party making the application is required to act in good faith and with reasonable diligence. If he has knowingly acquiesced in the judgment, or been guilty of unreasonable delay in seeking his remedy, relief will be denied him: 1 Black, Judgments, § 313; *McQuillan* v. *Hunter*, 1 Phila. 50; *McCormick* v. *Hogan*, 48 Md. 404.

4. As to what laches and delay will preclude a party from moving to vacate a judgment must be determined upon the particular facts of each case. No general rule can be or has been laid down on the subject. Now, it appears that Bates knew of the service on Cook, and, without object-

ing thereto, or raising any question as to the validity of the decree, negotiated with the plaintiff for an adjustment of the differences between it and the defendant, on the assumption that the service was good and the decree valid. He thereby necessarily induced the plaintiff to rest secure on the belief of its officers and attorney, caused by the representations of himself and Selover, that Cook was in fact the agent and representative in Oregon of the defendant. If Cook was not an agent at the time the service was made, it was the plain duty of Bates, under the circumstances, to have disclosed that fact to the plaintiff, and, if he had done so, it would have been able to have made service upon him, and thereby unquestionably have obtained jurisdiction. He, however, made no objection to the service or the validity of the decree, but on the other hand, entered into an arrangement with the plaintiff for the postponement of the issuing of an execution on the decree. The defendant having thus recognized and acquiesced in the regularity of the service and the validity of the decree, it was too late for it to move four months thereafter to vacate the decree and quash the return on a mere technical insufficiency of service.

The decree of the court below will be affirmed, and it is so ordered.                                        AFFIRMED.